# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
TOZZI, SCHASBERGER, and BURTON
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Private First Class DAVID DIMAS**
**United States Army, Appellant**

ARMY 20160784

Headquarters, Fort Stewart
John S.T. Irgens, Military Judge
Colonel Michael D. Mierau, Jr., Staff Judge Advocate

For Appellant: Lieutenant Colonel Christopher D. Carrier, JA; Captain Katherine L. DePaul, JA (on brief).

For Appellee: Colonel Tania M. Martin, JA; Lieutenant Colonel Eric K. Stafford, JA; Major Michael E. Korte, JA (on brief).

30 August 2017

----------------------------------
SUMMARY DISPOSITION
----------------------------------

Per Curiam:

A military judge sitting as a general court-martial convicted appellant, pursuant to his pleas, of two specifications of abusive sexual contact and one specification of sexual assault, in violation of Article 120 of the Uniform Code of Military Justice, 10 U.S.C. § 920 (2012 & Supp. III 2016) [hereinafter UCMJ]. The military judge sentenced appellant to a dishonorable discharge, confinement for ten months, and reduction in grade to E-1. The convening authority approved the adjudged sentence.

This case is before the court for review pursuant to Article 66, UCMJ. Appellant asks this court to dismiss Specification 2 of The Charge because the misconduct is based on the same transaction and impulse as the misconduct in Specification 3 and is, therefore, an unreasonable multiplication of charges. We find appellant affirmatively waived this issue through his pretrial agreement and unconditional guilty plea, and, in any event, the specifications were not unreasonably multiplied.[1]

---

[1] We have considered those matters personally raised by appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), and find them to be without merit.

**BACKGROUND**

Appellant and other Soldiers from his unit rented two rooms at a hotel near their post. After an evening of drinking alcohol, Private (PV2) JM and her boyfriend retired to one of the rooms. Appellant entered the room, climbed into the bed behind a sleeping PV2 JM, and kissed her. Private JM woke and initially thought appellant was her boyfriend. Appellant then proceeded to grope PV2 JM's breast and digitally penetrate her. Once PV2 JM felt appellant's hair and realized the person in her bed was not her boyfriend, she stood up and called for help. Based on this conduct, the government charged appellant with two specifications of abusive sexual contact and one specification of sexual assault.

Appellant entered into a five-page pretrial agreement (PTA) with the convening authority. Paragraph five of the PTA read as follows:

> 5. I agree to waive the following motions that are capable of being waived:
>
> . . .
>
> b. Defenses or objections based on defects in the charges and specifications (other than any failure to show jurisdiction or to charge an offense, which objections shall be resolved by the military judge at any time during the pendency of the proceedings);
>
> . . .
>
> j. Unreasonable multiplication of charges for sentencing purposes; . . . .

Additionally, paragraph twelve of the PTA stated: "I specifically acknowledge that by pleading guilty, I expressly waive on appeal any motion that is capable of being waived . . . ."

During the providence inquiry, the military judge went over the PTA paragraph-by-paragraph. After reading paragraph five, the military judge had the following colloquy with appellant:

> MJ: And paragraph number five says you agree to waive the following motions that are capable of being waived, correct?
>
> ACC: Yes, Your Honor.

> MJ: Now I advise you certain motions are waived or given up if your defense counsel doesn't make the motion prior to entering your plea. You've already entered a plea, so some of these motions are already gone, right?
>
> ACC: Yes, Your Honor.
>
> MJ: And you understood that coming in, based on you reading this pretrial agreement, correct?
>
> ACC: Yes, Your Honor.
>
> . . . .
>
> [MJ:] Do you understand this term in your pretrial agreement precludes the court or any appellate court from having an opportunity to determine if you are entitled to any relief based on these motions?
>
> ACC: Yes, Your Honor.
>
> . . . .
>
> MJ: Which side initiated the waiver of motions provision, paragraph number five?
>
> DC: Defense, Your Honor.

## LAW AND DISCUSSION

Our superior court, in *United States v. Gladue*, 67 M.J. 311, 313 (C.A.A.F. 2009), addressed the effect of "waiver" and "forfeiture" of an issue on appeal. "'[W]aiver is the intentional relinquishment or abandonment of a known right[,]'" which would preclude appellate review of an issue. *Id.* (quoting *United States v. Olano*, 507 U.S. 725, 733 (1993)). On the other hand, "'forfeiture is the failure to make the timely assertion of a right,'" which requires a review for plain error on appeal. *Id.* (quoting *Olano*, 507 U.S. at 733); *see also, United States v. Sweeney*, 70 M.J. 296 (C.A.A.F. 2011).

Appellant clearly waived the issue of whether the specifications of The Charge were unreasonably multiplied. First, his unconditional guilty plea served to waive the issue. Second, if that was not enough, his PTA and colloquy with the military judge clearly indicate this was an intentional relinquishment of a known right.

Ordinarily, appellate courts "do not review waived issues because a valid waiver leaves no error to correct on appeal." *United States v. Ahern*, 76 M.J. 194,

3

DIMAS—ARMY 20160784

197 (C.A.A.F. 2017) (citing *United States v. Campos*, 67 M.J. 330, 332 (C.A.A.F. 2009)).  Notwithstanding appellant's waiver, after assessing the entire record we are required to determine whether under Article 66(c), UCMJ, we should leave appellant's waiver intact, or "notice" the error for the first time on appeal.  *United States v. Chin*, 75 M.J. 220, 223 (C.A.A.F. 2016); *see also United States v. Gilchrist*, 61 M.J. 785, 789 (Army Ct. Crim. App. 2005).

After a review of the entire record and applying the five-part test from *United States v. Quiroz*, there is no error to notice.  *See* 55 M.J. 334, 338 (C.A.A.F. 2001).[2] Specifically, appellant did not object at trial; the charge of grabbing PV2 JM's breast is not the same criminal act of digitally penetrating her vulva; three specifications do not misrepresent or exaggerate appellant's criminality; Specification 2 does not unreasonably increase appellant's punitive exposure; and the record shows no evidence of prosecutorial overreach or abuse.  Though the conduct occurred over a short period of time, the conduct was not one impulse and one transaction.

**CONCLUSION**

The findings of guilty and the sentence are AFFIRMED.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court

---

[2] The *Quiroz* test: "(1) Did the accused object at trial that there was an unreasonable multiplication of charges and/or specifications?; (2) Is each charge and specification aimed at distinctly separate criminal acts?; (3) Does the number of charges and specifications misrepresent or exaggerate the appellant's criminality?; (4) Does the number of charges and specifications [unreasonably] increase the appellant's punitive exposure?; and (5) Is there any evidence of prosecutorial overreaching or abuse in the drafting of the charges?"  55 M.J. at 338 (internal quotation marks and citation omitted).

4